UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MAXIMO ROBERTO VERA,

               Petitioner,        <u>MEMORANDUM AND ORDER</u>
   -v-                       20-CV-4299 (JS)

STATE OF NEW YORK,

               Respondent.
------------------------------------X
APPEARANCES

For Petitioner:    Maximo Roberto Vera, <u>Pro Se</u>
                  Prisoner No. 18A0070
                  Sing Sing Correctional Facility
                  354 Hunter Street
                  Ossining, New York  10562-5442

For Respondent:    Karla L. Lato, Esq.
                  Suffolk County District Attorney's Office
                  2000 Center Drive
                  Riverhead, New York  111901

SEYBERT, District Judge:

        Following a jury trial in 2017,[1] Petitioner Maximo Vera

("Petitioner" or "Vera") was convicted of: Rape in the First Degree

---

[1]  Petitioner's jury trial took place from July 18 to August 16,
2017.  Trial transcripts of the state court trial and related
proceedings, are found in the Case Docket as follows:

| Proceeding | Date | ECF No. |
|---|---|---|
| Pre-trial conference | 07/17/2017 | 10-5 |
| Jury selection | 07/18/2017 | 10-6 |
| Jury Selection | 07/19/2017 | 10-7 |
| Trial | 07/31/2017 | 10-8 |
| Trial | 08/01/2017 | 10-9 |
| Trial | 08/03/2017 | 10-10 |
| Trial | 08/04/2017 | 10-11 |
| Trial | 08/07/2017 | 10-12 |
| Trial | 08/08/2017 | 10-13 |

(count one, New York Penal Law (hereinafter, "Penal Law") § 130.35), a class B violent felony; Criminal Sexual Act in the First Degree (count two, Penal Law § 130.50), a class B felony; Sexual Abuse in the First Degree (count four, Penal Law § 130.65), a class D felony; and, Endangering the Welfare of a Child (count five, Penal Law § 260.10), a class A misdemeanor. (08/16/2017 Tr. at 9-11.) Consequently, Petitioner is presently serving a 25-year sentence in a state prison. (12/18/2017 Tr. at 9-10.)

Presently, before the Court is Petitioner's <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") raising three grounds for relief. (<u>See</u> Petition, ECF No. 1.[2]) Respondent, the State of New York ("Respondent" or "State"), represented by the Office of the District Attorney for Suffolk County, opposes the Petition. (<u>See</u> Opp'n, ECF No. 10;

| (Table continued) | | |
| Proceeding | Date | ECF No. |
| Trial | 08/09/2017 | 10-14 |
| Trial | 08/10/2017 | 10-15 |
| Trial | 08/11/2017 | 10-16 |
| Trial (summations) | 08/14/2017 | 10-17 |
| Trial (deliberations; verdict) | 08/16/2017 | 10-18 |
| Sentencing | 12/18/2017 | 10-19 |

Hereafter, no reference to the relevant ECF Number will be made; rather, citations to the transcripts will be by the date in the following format: "[MM/DD/YYYY] Tr."

[2] Hereafter, when pin-citing to the Petition, the Court will use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

Support Memo, ECF No. 10-1).   For the reasons stated below, the
Petition is DENIED in its entirety, and the case is dismissed.

BACKGROUND

I.   The Offense

From 2010 to 2014, Petitioner rented out a room in his
house in Patchogue, New York, located in Suffolk County, to a
family which included two minors — A. (hereinafter, "Victim")[3] and
her twin sister — their mother, and the mother's boyfriend.
(07/31/2017 Tr. at 139-41.)   The residence was located across the
street from the Riverside Elementary School, which Victim
attended.   (Id. at 139.)

In September 2016, when Victim was in the fifth grade,
she disclosed to her schoolteacher that she was previously sexually
assaulted by Petitioner.   (Id. at 88-89; 08/03/2017 Tr. at 112.)
The disclosure came in an apology letter Victim was required to
write in school (hereafter, the "Apology Letter").   (See id.; see
also Apology Letter.[4])   In said Apology Letter, Victim disclosed
she was inappropriately touched by an adult.   (See Apology Letter.)
After the teacher asked for more details, Victim wrote the adult

---

[3]   According to the trial testimony of Victim's mother, Victim
suffered from ADHD, cerebral palsy, and was "paraplegic in her
leg."   (07/31/2017 Tr. at 139.)

[4]   The Apology Letter was People's Exhibit 24 in the state court
trial and is found in the instant Case Docket at ECF No. 10-4, ECF
pp. 207-08.   Hereafter, when cited, the Court will simply reference
to "Apology Letter".

was "Max" who lived "in 15 River Avenue in a green house."[5] (7/31/2017 Tr. at 121; Apology Letter.)  Subsequent investigation into Victim's allegations revealed multiple instances of sexual assault and rape of Victim by Petitioner in September 2014, December 2014, and June 2015.  (08/04/2017 Tr. at 162.)  Petitioner was arrested and indicted in 2016.  (See Indictment, ECF No. 10-4, at 123-25; see also Response, ECF No. 10, ¶ 21.)

II.  The Trial and Sentence

At the ensuing trial, the prosecution presented testimony from multiple witnesses, including: Victim; Victim's mother and sister; the teacher to whom Victim made her initial disclosure; a social worker; and, the police detective who investigated the case.  Victim testified to the details of the rape and assaults, describing the circumstances, such as that Petitioner anally and vaginally raped her in his house when Victim's family was there to exchange Christmas gifts in 2014. (08/03/2017 Tr. at 130-48.)  She further testified Petitioner sexually assaulted her by digital penetration when she was staying at his house in June 2015 after her mother had giving birth to Victim's half-brother.  (Id. at 151-55.)

---

[5]  In said Apology Letter, Victim also stated: she thought her sister might have also been abused; her step-sister was a bully; and she had troubles at home.  (Apology Letter.)

4

Victim's Apology Letter were admitted into evidence. (See Apology Letter.)  The teacher and social worker who spoke to Victim about its contents both testified at trial.  (07/31/2017 Tr. at 75-111, 113-31.)  The investigating police detective testified as well, (08/04/2017 Tr. at 134-66; 08/07/2017 Tr. at 3-79), as did a forensic medical examiner, (08/04/2017 Tr. at 5-83), and a child psychologist, (08/07/2017 Tr. at 126-49.) Specifically, the forensic medical examiner testified she had examined Victim and, despite the examination taking place approximately two years after the assaults, there were physical indications, such as internal scaring, consistent with adult male penetration of a female child.  (08/04/2017 Tr. at 30-37.)

Petitioner, represented by Rudy Velez, Esq. ("Defense Counsel" or "Velez"), did not dispute Victim was subjected to sexual assault and rape but argued she falsely identified Petitioner as the perpetrator.  (See, e.g., 07/31/2017 Tr. at 60-61; 08/14/2017 Tr. at 9-10.)  Further, in his defense, Petitioner testified, (08/09/2017 Tr. at 11-80; 08/10/2017 Tr. at 17-148; 08/11/2017 Tr. at 3-77), as did his family members (08/08/2017 Tr. at 8-50, 70-128, 129-200.)  Their collective testimony attempted to cast doubt on Victim's recollection of events and dates.  For example, Petitioner and his wife both testified there was no gift exchange with Victim's family during Christmas 2014 since they both worked that Christmas Eve and left

5

for New Jersey immediately after work to celebrate Petitioner's birthday. (08/08/2017 Tr. at 150-53; 08/09/2017 Tr. at 27-28.) And, Vera's daughter testified that neither Victim nor her sister stayed at Petitioner's house in June 2015. (08/08/2017 Tr. at 90-91.)

The State called Victim's aunt as a rebuttal witness, who testified that, in June 2015, after Victim's mother gave birth and was still in the hospital, Victim and her sister stayed at Petitioner's house because it was close to their school. (08/11/2017 Tr. at 102-18.) According to Victim's aunt, Petitioner and his wife even dropped Victim off at the hospital to see her mother. (Id.)

After deliberating, the jury returned its verdict of guilty on four counts (counts one, two, four and five). Petitioner was sentenced to a term of imprisonment of 25 years on counts one and two (rape in the first degree and sexual assault in the first degree), followed by 20 years of post-release supervision, to be served concurrently with the lesser terms the state court imposed on the other counts. (See Sent'g Tr. at 9-10.)

III. The State Appeal

Petitioner appealed the verdict and sentence. Represented by different counsel, Petitioner argued: (1) he received ineffective assistance of trial counsel in violation of the Sixth Amendment; (2) the jury verdict was not legally

sufficient and against the weight of the evidence; and (3) the sentence was harsh and excessive.  (Appeal Support Memo, ECF No. 10-4, at ECF pp. 144-200.[6])  With respect to his ineffective assistance claims, Petitioner argued Defense Counsel was ineffective because he failed to: (1) object to the introduction and admission in evidence of Victim's Apology Letter and other hearsay evidence; (2) request Molineux and Sandoval hearings to prevent the introduction into evidence that Petitioner is an undocumented alien who fraudulently obtained a Social Security number; and (3) request the jury be instructed on an alibi defense. (Id. at 39-45.)  The People opposed the appeal.  (Appeal Opp'n, ECF No. 10-4, at ECF pp. 215-66.)

        The Appellate Division, Second Department, ultimately affirmed Petitioner's verdict and sentence.  See People v. Vera, 179 A.D.3d 848, 113 N.Y.S.3d 887 (2d Dep't. 2020).  Specifically, the Appellate Division found Petitioner's challenge to the legal sufficiency of the evidence was unpreserved for the appellate review, and, in any event, viewed in the light most favorable to the prosecution, Petitioner's guilt was proven beyond reasonable doubt.  See id.  After conducting an independent review of the evidence and appropriately deferring to the jury's credibility determinations, the Appellate Division further found the verdict

---

[6] Hereafter, when citing to Petitioner's Appeal Support Memo, the Court will cite to that document's internal page numbers.

was not against the weight of the evidence.  See id.  It also summarily held Petitioner "was not deprived of the effective assistance of counsel" and "[t]he sentence imposed was not excessive."  Id.  The Court of Appeals denied leave to appeal. See People v. Vera, 35 N.Y.3d 945, 147 N.E.3d 547, 124 N.Y.S.3d 277 (2020).[7]

IV.   Procedural History

On September 16, 2020, Vera timely filed the present § 2254 Petition seeking to vacate his conviction and sentence. (See Petition.)  The State responded, arguing Petitioner's claims are either procedurally barred, not cognizable habeas claims, and/or without merit.  (Opp'n at 10-29; see also Response, ECF No. 10.)  Defense Counsel Velez provided an affirmation responding to Petitioner's allegations of ineffective assistance of counsel. (Velez Aff., ECF No. 11, at 1-2.)  Although provided an opportunity to do so, Petitioner did not reply.  (See Oder to Show Cause, ECF No. 5, ¶ 7; see also Case Docket, in toto.)  The Petition is deemed fully briefed; the Court proceeds to rule upon it.

---

[7]   The Court takes judicial notice Petitioner did not file any motions pursuant to Criminal Procedure Law § 440.  In his Petition, Petitioner appears to be confusing the possibility of seeking leave to appeal in the New York Court of Appeals (which he did) with filing an additional (i.e., collateral) challenge to the verdict and sentence, stating his "[a]ttorney did not advi[s]e of the possibility of the first, second, or third petition."  (Petition at 4.)

Legal Standards

I.   Section 2254 Standard of Review

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court, when considering a claim that was decided on the merits in a state court proceeding, may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also McBride v. Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015) ("'[I]t is not the province of a federal

9

habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  The requirements set forth by the AEDPA are strictly construed and, by design, establish a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted).

Under § 2254(d)(1), a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court] precedent." Williams, 529 U.S. at 405-06.  "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams, 529 U.S. at 412 (alteration in original)).  By contrast, an "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal

10

rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08. "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted).

As Vera's claims appear not to invoke the second subsection of § 2254(d) -- the "unreasonable determination of the facts" -- the Court need not address the applicable legal standard.

## II.  Procedural Bars to Federal Habeas Review

### A.  Failure to Exhaust

A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exhaustion of the state remedies requires a petitioner to "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (internal quotation marks and citation omitted; alteration in original). The state courts must have had "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding," exhausting with this the state remedies.

11

Picard v. Connor, 404 U.S. 270, 276 (1971).  To accomplish this, a state prisoner must "present the state courts with the same claim he urges upon the federal courts."  Id.

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In New York, a defendant must exhaust his claims by seeking leave to appeal in the New York Court of Appeals.  See Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000).

    B.    State Procedural Requirements

    A federal court "may not review federal claims that were procedurally defaulted in state court — that is, claims that the state court denied based on an adequate and independent state procedural rule."  Davila v. Davis, 582 U.S. 521, 527 (2017); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) ("[F]ederal courts may not review the judgment of a state court that 'rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.'"  (quoting Harris v. Reed, 489 U.S. 255, 260 (1989))).  This principle serves to "ensure that state-court judgments are accorded the finality and respect necessary to

preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A state procedural rule is adequate if it is "firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." Harris, 489 U.S. at 261-63, 265 n.12. Further, a state court's reliance on an independent and adequate procedural bar forecloses habeas review even if the state court also rejected the claim on the merits in the alternative. See, e.g., id., at 264 n.10 (explaining "a state court need not fear reaching the merits of a federal claim in an alternative holding" where it "explicitly invokes a state procedural bar rule as a separate basis for [its] decision" (emphasis in original)); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); Nowakowski v. New York, No. 13-CV-3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (noting "[t]he bar applies even where the state court has also ruled in the alternative on the merits of the federal claim" (internal quotation marks and citation omitted)).

Notwithstanding the existence of a procedural bar to a claim under state rules, "a federal court may still review the claim on the merits [1] if the petitioner can demonstrate both cause for the default and resulting prejudice, or [2] if he [or she] can demonstrate that the failure to consider the claim will result in a miscarriage of justice." Petronio v. Walsh, 736 F. Supp. 2d 640, 654 (E.D.N.Y. 2010) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)). As to the cause and resulting prejudice avenue, a "[c]ause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.'" Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986) (citations omitted)).[8] As to prejudice, the petitioner must demonstrate more than "a possibility of prejudice," but rather that the errors below "worked to his actual

---

[8]   Although ineffective assistance of counsel may, in some circumstances, constitute cause for a default, the claim for ineffective assistance "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Edwards v. Carpenter, 529 U.S. 446, 452 (2000) (quoting Murray, 477 U.S. at 489); see also Pitre v. Griffin, No. 16-CV-6258, 2016 WL 7442653, at *11 (E.D.N.Y. Dec. 26, 2016) ("[T]he ineffective assistance claim must itself have been exhausted in the state court.").

and substantial disadvantage." Murray, 477 U.S. at 494 (internal quotation marks and citation omitted; emphasis in original).

★★★

Finally, "[t]he Court is mindful that, as with all pro se pleadings, a habeas petition filed pro se is to be construed liberally." Crowder v. Ercole, No. 09-CV-3401, 2012 WL 5386042, at *2 (E.D.N.Y. Nov. 2, 2012) (citation omitted); see also Alonge v. Chappius, No. 12-CV-542, 2019 WL 1642449, at *6 (E.D.N.Y. Apr. 16, 2019) ("[T]he court must interpret petitioner's pleadings as raising the strongest arguments they suggest").[9] Pro se status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citation omitted).

DISCUSSION

Petitioner challenges his state court conviction and sentence on three grounds, i.e.: (1) the verdict was not supported by legally sufficient evidence and was against the weight of the evidence; (2) he received ineffective assistance of trial counsel; and(3) the sentence of 25 years of imprisonment and 20 years of

---

[9] Petitioner did not submit a memorandum of law in support of his Petition. Therefore, the Court has relied upon his Appeal Support Memo (see ECF No. 10-4 at ECF pp. 144-200), for arguments supporting the grounds he presents here for habeas relief.

post-release supervision was harsh and excessive.[10]  (See Petition, Grounds One & Two.)  For the following reasons, the Petition is denied in its entirety.[11]

I.   Ground One:  Legal Sufficiency and Weight of the Evidence

As he did on direct appeal, here, Petitioner claims the jury verdict was not supported by legally sufficient evidence and was against the weight of the evidence.  (See Petition at 6; see also Appeal Support Memo at 46-50.)  In opposition, Respondent argues Petitioner's challenge to legal sufficiency was appropriately found by the state court as procedurally defaulted, and his weight of the evidence challenge does not present a cognizable federal habeas claim.  (See Opp'n at 10-17.)  The Court agrees with both of Respondent's positions.

As to Legal Sufficiency:  "The New York Court of Appeals has held that to preserve for appellate review a challenge to the

---

[10]  The Court notes Vera mistakenly states in his Petition that he was sentenced to 25-years-to-life in prison, (see Petition at 6); however, the imposed sentence was 25 years on the Counts 1 and 2 (to be served concurrently), followed by 20 years of post-release supervision, and lower concurrent sentences on the remaining counts.  (See Sent'g Tr. at 9-10.)

[11]  To the extent Petitioner requests an evidentiary hearing, said request is denied.  Pursuant to Rule 8 of the Rules Governing Section 2254 Cases, upon its thorough review of Petitioner's submission, Respondent's Response and Opposition, and the state court record and transcripts, the Court determines an evidentiary hearing is not warranted.  See Richardson v. Wolcott, No. 20-CV-6178, 2023 WL 4999832, at *8 (W.D.N.Y. Aug. 4, 2023).

legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged." <u>Bethea v. Walsh</u>, No. 09-CV-5037, 2016 WL 258639, at *39 (E.D.N.Y. Jan. 19, 2016) (quoting <u>People v. Hawkins</u>, 900 N.E.2d 946, 950 (N.Y. 2008)). This preservation requirement rule, as applied by the Appellate Division in Petitioner's appeal, "is a firmly established and regularly followed state practice that bars subsequent habeas review." <u>Kimbrough v. Bradt</u>, 949 F. Supp. 2d 341, 361 (N.D.N.Y. 2013)(citations omitted); <u>see also</u> <u>Siciliano Nuñez v. McCarthy</u>, No. 20-CV-3034, 2024 WL 700127, at *8 (E.D.N.Y. Feb. 21, 2024); <u>Swail v. Hunt</u>, 742 F. Supp. 2d 352, 360 (W.D.N.Y. 2010) ("A state procedural bar qualifies as an independent and adequate state law ground if the last state court rendering a judgment in the case clearly and expressly states that its judgment rested on a state bar." (internal quotation marks, citations, and altercations omitted)). "Specifically, '[e]ven where the state court has ruled on the merits of a federal claim in the alternative, federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default.'" <u>Cordova v. Lavalley</u>, 123 F. Supp.3 d 387, 396 (E.D.N.Y. 2015) (quoting <u>Murden v. Artuz</u>, 497 F.3d 178, 191 (2d Cir.2007)).

Petitioner's legal sufficiency argument is identical to the one he previously raised on appeal. (<u>See</u> Appeal Support Memo

at 46-50.)   In considering Vera's claim of legal insufficiency, the Appellate Division, Second Department ruled:

> [Vera's] challenge to the legal sufficiency of the evidence supporting his convictions is unpreserved for appellate review since he failed to move for a trial order of dismissal specifically directed at the errors he now claims (see CPL 470.05[2]; People v. Carncross, 14 N.Y.3d 319, 324-25 (2010); People v. Hawkins, 11 N.Y.3d 484, 492 (2008)). In any event, viewing the evidence in the light most favorable to the prosecution (see People v. Contes, 60 N.Y.2d 620, 621 (1983)), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

Vera, 179 A.D.3d at 848.   It is clear the Appellate Division "explicitly invoke[d] a state procedural bar rule as a separate basis for its decision." Velazquez v. Leonardo, 898 F.2d 7,9 (2d Cir. 1990); see also Cardova v. Lavalley, 123 F. Supp. 3d 387, 397 (E.D.N.Y. 2015) ("[A]lthough the Appellate Division briefly discussed the merits of Petitioner's claim, its decision also clearly stated a state procedural ground for default . . . . [A]s such, this Court is foreclosed from reviewing the state court decision because the Appellate Division also expressly relied on Petitioner's procedural default." (internal quotation marks, brackets and citation omitted)).   Therefore, because the Appellate Division rested its rejection of Vera's legal sufficiency challenge on his failure to adhere to the procedural rule to

18

preserve the claim for appellate review, this Court is foreclosed from reviewing the state court's decision.

Petitioner is able to overcome this procedural default "if he shows that equity demands it," "either by demonstrate[ing] cause and prejudice for the procedural default, or that the constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." Murden, 497 F.3d at 194 (internal quotations and citation omitted). However, Petitioner has failed to do either.  He does not: explain the cause for the default; claim Velez was ineffective for failing to preserve the issue: or argue non-review of the claim would cause him prejudice or be a miscarriage of justice.  "Without demonstrating cause and prejudice or that the constitutional violation resulted in the conviction of someone who is innocent, Petitioner's claim on this issue remains procedurally barred." Cardova, 123 F. Supp. 3d at 397.  Therefore, Petitioner's claim does not stand.[12]

---

[12]  Even if the Court were to consider the merits of Petitioner's legal sufficiency challenge, he fails to satisfy the heavy burden to succeed with such claim.  Indeed, a state criminal conviction stands if, "after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) ("[The court] review[s] the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

As to Weight of the Evidence: Petitioner's claim that
the jury verdict was against the weight of the evidence is patently
unavailing, especially because his is not a case where the record
is devoid of evidentiary support for said verdict. See Strzelecki
v. Cunningham, No. 15-CV-0133, 2019 WL 6050404, at *14-15 (E.D.N.Y.
Nov. 15, 2019) (instructing a "weight of the evidence" claim is
based on state law and a federal habeas court "cannot consider a
purely state law claim on federal habeas review" (citations
omitted)); see also id. at note 7 (noting the Appellate Division
rejected petitioner's weight-of-the-evidence claim on two grounds:
first, viewing said evidence in the light most favorable to the
state, finding it legally sufficient to establish guilt beyond a

---

In this instance, the evidence adduced at Petitioner's trial,
though mostly circumstantial, was vast.  Beyond the Victim's
testimony, the jury heard testimony from, inter alia, the forensic
medical examiner, a child psychologist, and multiple additional
witnesses.  Because the legal sufficiency "inquiry does not focus
on whether the trier of fact made the correct guilt or innocence
determination, but rather whether it made a rational decision to
convict or acquit," Herrera v. Collins, 506 U.S. 390, 402 (1993),
the Court "must defer to the state court's findings and is
precluded from re-evaluating conflicting testimony." Whitehead v.
Artus, No. 08-CV-4064, 2011 WL 4047486, at *4 (E.D.N.Y. Sept. 8,
2011).

Furthermore, the Appellate Division alternatively determined
the evidence of Petitioner's guilt was legally sufficient.  See
Vera, 279 A.D.3d at 848.  Upon its own review of the state record
below, this Court concurs.  Viewing the evidence in the light most
favorable to the prosecution and deferring credibility
determinations to the jury, the Court finds Petitioner's claim
that his guilty verdict was not proven beyond reasonable doubt and
the evidence was not legally sufficient is without merit and does
not warrant habeas relief.

reasonable doubt; and second, upon independent review, while according the jury's verdict determination great deference, satisfying itself that the guilty verdict was not against the weight of evidence); see also Hatcher v. Heath, No. 20-CV-782, 2011 WL 4710854, at *8 (E.D.N.Y. Oct. 4, 2011) ("The argument that the jury's verdict was contrary to the weight of the evidence . . . does not raise a question of federal due process, and is not cognizable on a habeas petition."). The record here is far from lacking evidentiary support. Rather, the Victim's testimony about Petitioner's acts towards her was supported by other witnesses' testimonies, such as that of: her mother, sister, and aunt; the investigating detective; the forensic medical expert; and, the child psychologist. Therefore, the weight of the evidence claim is wholly unsupportable.

## II.  Ground Two: Ineffective Assistance of Counsel

Next, Petitioner claims he was denied effective assistance of trial counsel in violation of the Sixth Amendment of the U.S. Constitution. (See Petition at 5.) Specifically, he argues Defense Counsel Velez was ineffective for failing to: (1) object to the introduction and admission into evidence the Victim's Apology Letter and other hearsay evidence during the social worker's and investigating detective's respective testimonies; (2) request a Molineux or Sandoval hearing; and (3) request the jury be given an alibi charge. (Id.) These are the

same claims Petitioner raised on appeal, which the Appellate Division rejected. (Compare Appeal Support Memo at 29-45), with Vera, 179 A.D.3d at 848. Here, Respondent argues none of these claims carry merit warranting habeas relief and Defense Counsel's performance was effective. (Opp'n at 20-21; see also Velez Aff. (refuting Petitioner's claims).) The Court finds that is so.

Strickland v. Washington sets forth the relevant federal law governing claims of ineffective assistance of counsel. 466 U.S. 668 (1984). To prevail, a petition must establish (1) the "counsel's performance was deficient" and (2) "that deficient performance prejudiced the defense." Id. at 687. To make out a successful claim, both Strickland factors must be satisfied; a reviewing court is not required to "even address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

As to the Deficient Factor: "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 688). In evaluating this prong, "the court must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Henry v. Poole</u>, 409 F.3d 48, 63 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 689). Furthermore, "'[t]he failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance.'" <u>Parks v. Sheahan</u>, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) (quoting <u>Hicks v. Ercole</u>, No. 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015)).

      <u>As to the Prejudice Factor</u>: To make a sufficient showing of prejudice, a petitioner:

> must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

<u>Strickland</u>, 466 U.S. at 694.

      Furthermore, the "highly deferential <u>Strickland</u> standard is made doubly so on habeas review, as AEDPA requires deference to the state court's ruling." <u>Bogan v. Brandt</u>, No. 11-CV-1550, 2017 WL 2913465, at *9 (E.D.N.Y. July 6, 2017) (internal quotation marks and citations omitted). "Bearing this deferential standard in mind, it is unsurprising that 'the great majority of habeas

petitions that allege constitutionally ineffective counsel' fail."
<u>Miller v. LeClair</u>, No. 20-CV-1546, 2024 WL 1797341, at *12
(E.D.N.Y. Apr. 25, 2024) (quoting <u>Lindstadt v. Keane</u>, 239 F.3d
191, 199 (2d Cir. 2001)).

    A.   <u>Counsel's Failure to Object to the Admission of the
Apology Letter and Other Hearsay Evidence.</u>

       First, Petitioner claims Defense Counsel should have
objected to the introduction and admission into evidence of
Victim's prior consistent statement, <u>i.e.</u>, the full contents of
her Apology Letter. (<u>See</u> Petition at 5; <u>see also</u> Appeal Support
Memo at 31-35.) Petitioner also alleges he was denied effective
assistance of counsel because Defense Counsel failed to object to
"other prejudicial hearsay testimony." (Petition at 5.) While
Petition does not specify the alleged hearsay testimony here, it
appears he pressed the same argument on appeal. In state court,
Petitioner argued Velez was ineffective for failing to object to
various statements made by the social worker and by the
investigating detective which he asserts were hearsay. (<u>See</u> Appeal
Support Memo at 34-35.) The Appellate Division rejected these
arguments finding no ineffective assistance of counsel. See <u>Vera</u>,
179 A.D.3d at 848.

       Here, Velez defends himself against Petitioner's
ineffective assistance claims, arguing "[a]ny failure to object to
complainant's prior consistent statement was strategic trial

strategy." (Velez Aff. at ¶ A.) He also states he chose to conduct a cross-examination of the investigating detective with questions "carefully tailored by the defense to establish reasonable doubt" and which, "in its totality[,] was devastating towards the People's case." (Id.)

Generally, a failure to object to the introduction of evidence, even if such evidence could be deemed inadmissible, does not constitute ineffective assistance "as long as such conduct constituted a sound trial strategy." Smith v. Unger, No. 13-CV-5485, 2014 WL 2567099, at *6 (S.D.N.Y. June 9, 2014). Review of the instant record reveals Velez's lack of objections to the introduction of evidence did not fall outside of the wide range of reasonable professional assistance and was strategic on his part. Indeed, the defense's trial strategy was to challenge the identity of the Victim's assailant, not that the Victim was sexually assaulted.

First, the admission of Victim's Apology Letter was not inconsistent with the defense's strategy. Arguably, the Apology Letter's contents showed a troubled and confused child, which was consistent with the defense's position that the Victim was lying.

Second, Defense Counsel's choice not to object to the social worker's or investigating detective's respective testimonies, which permitted the jury to listen to testimony

25

painting a picture of a troubled child, was not inconsistent with the defense's strategy.

As to the Social Worker:  The social worker testified regarding the Victim reporting she was "really uncomfortable" going to school near Petitioner's house and transferring out of the school; said testimony was nor offered for the truth of the matter asserted but rather to explain how the school reacted to the Victim's complaint.  (See 07/31/2017 Tr. at 122-23.)  As such, without a valid reason to challenge the testimony as hearsay, Defense Counsel was not ineffective by not objecting to its introduction.  See Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled.").

As to the Investigating Detective:  Petitioner takes issue with the investigating detective's testimony, arguing said testimony bolstered Victim's credibility.  However, the detective also testified Victim's twin sister told him, inter alia, the Victim was known to make up stories.  (08/04/2017 Tr. at 151-55.) Not objecting to the introduction of the investigator's testimony regarding Victim's veracity was not inconsistent with the defense's strategy of challenging her identification of the perpetrator.  Just the opposite, it was helpful to the defense.  Nor can it be said that the detective's testimony regarding his

interview of Victim, during which the detective sought to determine whether Victim understood difference between a lie and the truth (id. at 147-49.), constituted the detective bolstering in some manner Victim's truthfulness.  Indeed, said testimony was not admitted for its truth, but to demonstrate the detective followed appropriate protocols for interacting with a child victim.  (Id.) As such, a hearsay objection would not have been appropriate or effective; hence, under such a scenario, by not raising such an objection, Velez was not ineffective.  See Aparicio, 269 F.3d at 99.

Finally, Velez's trial strategy was apparent in his closing summation to the jury when Velez stated: "[T]he issue again is not was the child sexually abuse[d] . . . .  The real issue is who did it."  (08/14/2017 Tr. at 9.)  Continuing, Defense counsel attempted to paint Victim as a troubled child who lied about the identity of her attacker: "Why would that little girl lie? . . . . [W]hy would she point a finger at Max Vera?  [J]ust like adults, [they] lie because they think it serves their purpose in some way . . . [the Victim's mother], [the Victim,] and her sister, they all lied."  (Id. at 10-12.)  Thus, Velez's chosen course of representation was not ineffective because, as the record establishes, it was part of his strategy in presenting Petitioner's defense.

Because Petitioner fails to show Defense Counsel's performance was deficient, the Court need not address the _Strickland_ prejudice factor.  However, the Court highlights, given the depth of evidence presented, _e.g._, the Victim's extensive and detailed testimony about the assaults; the forensic medical examiner's corroborating testimony that the Victim had signs of sexual assaults; and, the child psychologist's explanatory testimony that it is not unusual for child victims to confuse or mistake certain peripheral details, Petitioner would be unable to show that, had Defense Counsel objected to the admission of the Apology Letter or the alleged hearsay statements, the outcome of the trial would have been different.  Hence, because he would be unable to establish prejudice pursuant to _Strickland_, Petitioner's ineffective assistance claim would fail on this basis, as well.

B.  Counsel's Failure to Request a _Molineaux_ or _Sandoval_ Hearing

Petitioner also argues Defense Counsel was ineffective because he failed to request a Molineux or Sandoval hearing[13] to

---

[13] _People v. Molineux_, 168 N.Y. 264 (1901), explains when evidence of uncharged crimes is admissible at trial, _e.g._, to establish: motive; intent; absence of mistake; a common scheme or plan; or identity of a person.  _People v. Sandoval_, 34 N.Y.2d 371 (1974), provides when the evidence of past convictions can be used at trial.

The prosecution did not make a Molineux or Sandoval proffer prior to the trial and used the Molineux evidence (regarding Vera's fraudulently obtaining of a Social Security number) (_see_ 07/17/2017 Tr. at 7), only after the defense opened the door by having Petitioner testify about paying taxes, thereby exposing

preclude the admission of evidence Petitioner is an undocumented alien who fraudulently obtained a Social Security number. (See Petition at 6.)  Again, the Appellate Division rejected these same claims on direct appeal. (See Appeal Support Memo at 36-43); see also Vera, 179 A.D. 3d at 848.

Yet, here, Petitioner again argues Defense Counsel was supposed to request a Molineux or Sandoval ruling given Petitioner indicated he would testify in his own defense and his undocumented alien status was known to Velez. (See, e.g., Appeal Support Memo at 36-43.)  While Defense Counsel did not obtain such rulings prior to trial, there is no indication requesting such rulings would have been favorable to Petitioner or would have changed the outcome of the trial.  Moreover, given the extensive witness testimony and evidence of sexual assault suffered by Victim, it is unlikely the trial's outcome would have been different had the jury not heard Petitioner was an undocumented alien with a fraudulently procured Social Security number.  Therefore, as Respondent aptly argues,

---

Vera to impeachment-for-truthfulness questioning. (See 08/10/2017 Tr. at 2-11.)  The state court effectively made a Molineux ruling at trial by permitting the use of prior bad acts for the limited purpose of evaluating Petitioner's truthfulness. (See 08/10/2017 Tr. at 11.)

This Court takes notice Velez affirms he requested a pre-trial Sandoval hearing as part of an omnibus pre-trial motion, which the state court "entertain[ed]" (Velez Aff. ¶ B); however, the state court record presented does not include that pre-trial motion.

Petitioner's claim fails to satisfy the Strickland prejudice factor. (Opp'n at 24-25.)

Moreover, it appears the defense was relying upon Petitioner's undocumented alien status, and his paying taxes despite said status, to establish Petitioner's credibility. Further, while such testimony from Petitioner opened the door to prosecutorial cross-examination on that issue, the state court provided the jury with the following relevant limiting instruction:

> Members of the jury, I just want to bring to your attention that I'm permitting this evidence for a strictly limited purpose. The evidence that's being elicited is not evidence of the defendant's guilt in this case or evidence that the defendant is a person who is predisposed to commit crimes. You are being permitted to hear and consider this testimony with respect to bad acts only to evaluate the defendant's truthfulness on the stand.

(08/10/2017 Tr. at 20-21.) Because courts expect juries to follow their instructions, such limiting instruction mitigates the potential prejudice from Plaintiff's testimony. See United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) ("As the Supreme Court has frequently observed, the law recognizes a strong presumption that the juries follow limiting instructions."); see also Gonzales-Martinez v. Kirkpatrick, No. 16-CV-5119, 2017 WL 3891649, at *11 (E.D.N.Y. Sept. 6, 2017). Given all the evidence produced at trial, at most, the cross-examination of Petitioner on his

immigration status and procuring a Social Security number was harmless and did not change the outcome of the trial. Therefore, with Petitioner unable to show Strickland-required prejudice, his ineffective assistance claim fails, and the Court need not consider whether Velez's performance was deficient.

C.   Counsel's Failure to Request an Alibi Jury Charge

Petitioner next argues Velez was ineffective because he did not request an alibi charge. (See Petition at 5.) Petitioner raised the same claim on direct appeal. (See Appeal Support Memo at 43-45) (arguing jury should have been instructed there was no burden of proof on the defense with respect to the alibi).)

At trial, Petitioner argued he did not have an encounter with the Victim in December 2014, during a Christmas gift exchange. Besides his own and his family members' testimonies, Petitioner also produced a photograph taken at a Christmas 2014 gathering in New Jersey. However, the prosecution produced multiple witnesses who contradicted Petitioner's version of the events, which, as evidenced by its verdict, the jury credited. Furthermore, as Velez explained, he did not request an alibi charge "because there was no alibi testimony . . . elicited." (Velez Aff. ¶ C.) Moreover, Velez's decision not to request an alibi charge was consistent with the defense's strategy to elicit evidence "to show the improbability of [the claimed] sexual assault taking place" "in a small apartment with numerous people present" "without some adult

31

becoming aware of it." (Id.)  Here, and considering the trial evidence, Petitioner proffers nothing showing Velez's failure to request an alibi charge was not a strategic choice; rather, the scenario presented is one where Velez's "decision not to request an alibi charge may be considered a reasonable strategic decision [because] the evidence in support of the alleged alibi consists [primarily] of [Petitioner]'s testimony that" he was elsewhere on one occasion when the Victim claims she was abused.  Acencio v. McKinney, No. 05-CV-1026, 2007 WL 2116253, at *17 (E.D.N.Y. July 20, 2007) (finding, where defendant's alibi was seriously undermined by evidence adduced at trial, the failure to request an alibi charge did not render defense counsel's representation ineffective).  Therefore, Defense Counsel's performance was not deficient.  Furthermore, because the state court repeatedly instructed the jury it was the State's burden of proof on all elements of the charged crimes, even though the defense presented certain evidence, Petitioner "has not demonstrated the requisite prejudice to prevail on the second prong of the Strickland inquiry."  Id.

III. Ground Three:  Harsh and Excessive Sentence

Finally, Petitioner claims his sentence of 25 years of imprisonment is harsh and excessive.  (See Petition at 6; see also Appeal Support Memo at 51-55.)  "It is well settled that an excessive sentence claim may not be raised as grounds for habeas

corpus relief if the sentence is within the range prescribed by the state law." Licausi v. Griffin, 460 F. Supp. 3d 242, 267 (E.D.N.Y. 2020) (internal quotation marks and citations omitted); see also White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.").

As indicated, supra, Petitioner was convicted of two class B violent felony offenses for which the maximum permissible sentence is 25 years of incarceration. See Penal Law §§ 70.00, 70.02 (3)(a). As such, the state court's legally permitted maximum 25-year sentence is within the range prescribed by state law. In turn, therefore, Petitioner's sentence is not reviewable for excessiveness, rendering this claim without merit.

**\*\*\***

To the extent not explicitly articulated herein, the Court has considered Petitioner's remaining arguments in support of habeas relief, but finds them to be without merit.

CONCLUSION

Accordingly, for all the foregoing reasons, **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **DENIED**. The Clerk of the Court is directed to: dismiss the Petition; close the case; and, mail a copy of this Order to Petitioner; and

**IT IS FURTHER ORDERED** that the Court:

(A)  Declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); and

(B)  Pursuant to 28 U.S.C. § 1915(a)(3), certifies that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_/s/_ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:  August 21, 2024
        Central Islip, New York